IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2020 SEP 16 PM 3: 00

CLERK US DISTRICT COURT
WESTERN DISTRICT TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| STEVEN THOMAS SANDERS,<br>PLAINTIFF,<br><br>V.<br><br>RUTH RUGGERO HUGHS, TEXAS<br>SECRETARY OF STATE,<br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO. 1:20-CV-862-LY |

## **MEMORANDUM OPINION AND ORDER**

Before the court is the above-styled and numbered cause are *pro se* Plaintiff Steven Thomas

Sanders's Motion for Preliminary Injunction and/or Temporary Restraining Order and

Memorandum of Law in Support (the "Application") filed September 1, 2020 (Doc. #6) and

Defendant Ruth Ruggero Hughs's (the "Secretrary") Response to Plaintiff's Motion for

Preliminary Injunction and/or Temporary Restraining Order filed September 8, 2020 (Doc. #8).

Having considered the Application, response, and applicable law, the court renders the following

memorandum opinion and order denying Sanders's requested relief.

Sanders brings this lawsuit alleging violations of various constitutional rights.  42 U.S.C.

§ 1983; 28 U.S.C. § 2201.  Sanders also seeks injunctive relief to require the Secretary to accept

his petition for a place on the ballot for the November 3, 2020 general election without enough

voter signatures and to add his name as an independent candidate for Texas's 23rd United States

Congressional District (the "23rd District").  Addtionally, Sanders prays for attorney's fees and

costs and a declaration that

> the statutory deadline for submission of a petition with 500 signatures by August
> 13, 2020 has become too burdensome in light of the Covid-19 pandemic requiring
> social distancing and causing a risk of contracting and infecting to undergo a door
> to door campaign or to approach citizens out in public.

## BACKGROUND

Sanders is a San Antonio, Texas attorney who timely filed a Declaration of Intent with the Secretary to run as an independent candidate for the 23rd District in 2020. As of September 16, 2020, his campaign Twitter account has 47 followers. The Twitter account, @steventsanders, also reveals his present intention to run as an independent candidate for the 23rd District in 2020 and a previously announced campaign as an independent candidate for Texas's 21st United States Congressional District in 2018.[1] Despite the tweet, Sanders was not on the general-election ballot in 2018. Sanders's official campaign website has a tab labeled "Forum" with three sections where voters can (1) ask about policy, (2) give general feedback, or (3) ask personal questions.[2] Presently, there are zero views and zero comments across all three sections.

The Secretary is responsible for enforcing and administering Texas election laws, including the signature-gathering requirements for independent candidates to be placed on the ballot for the 2020 election. According to Sanders, his campaign began gathering signatures at the beginning of March but suspended its efforts on March 15, 2020. Sanders brought this case on August 18, 2020, three days after receiving an email from the Secretary's Director of Elections that Sanders's "name will not appear on the 2020 General Election ballot as an Independent candidate" because his "petition did not contain the required number of signatures." The gravamen of Sanders's argument is that public-health orders relating to the COVID-19 pandemic from Governor Abbott, Bexar County Judge Nelson Wolff, and San Antonio Mayor Ron Nirenberg have made it practically impossible to comply with the Texas Election Code's (the "Code") ballot-access requirements.

---

[1] Steven Sanders (@steventsanders), TWITTER (Dec. 10, 2019, 10:52 AM), https://twitter.com/steventsanders/status/1204443816213843968; *Id.* (Nov. 26, 2017, 4:34 PM), https://twitter.com/steventsanders/status/934913299526967297.

[2] STEVEN SANDERS FOR CONGRESS: CONSERVATIVE INDEPENDENT, *Forum*, https://www.stevensandersforcongress.com/forum (last visited Sept. 16, 2020).

ANALYSIS

## I.   <u>The Application</u>

A preliminary injunction will only be granted if the movant demonstrates:

> (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest.

*Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). The "extraordinary remedy" of a preliminary injunction should not be granted "unless the party seeking it has 'clearly carried the burden of persuasion on all four requirements,'" *id.*, and "unequivocally show[n] the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). The court begins its analysis of the Application by determining that Sanders does not establish a likelihood of success on the merits because Texas's interests outweigh any purported challenge Sanders faced in complying with the Code's signature-gathering requirement.

### a.   **Substantial Likelihood of Success on the Merits**

<u>*Sanders Failed to Meet the Code's "Modicum of Support" Ballot-access Requirements*</u>

There are several requirements for an independent candidate to appear on the general-election ballot. First, the candidate must "make a declaration of intent to run as an independent candidate." Tex. Elec. Code Ann. § 142.002. Sanders timely filed his declaration of intent with the Secretary. An independent candidate must also make a separate application for a place on the ballot, which must be accompanied by a petition with enough signatures to indicate a modicum of support. Tex. Elec. Code Ann. §§ 142.004, 142.007. For a district office, the minimum number of signatures is 500. *Id.* § 142.007(2). Each signer must be a registered voter in the territory of the office sought and must sign their name in their own handwriting. *Id.* §§ 141.063(a)(1), (b).

The petition must also include, for each signer, their address, date of birth or voter registration number, the date of signing, and the signer's printed name. *Id.* § 141.063(a)(2). The circulator of a petition must include an affidavit of the circulator stating that the circulator: pointed out and read to each signer, before the petition was signed, each statement pertaining to the signer; witnessed each signature; verified each signer's registration status; and believes each signature to be genuine and the corresponding information to be correct. *Id.* § 141.065(a).

A signature on an independent candidate's petition is valid if: (1) signed after the general primary election day or, if a runoff primary is held for the office the candidate is seeking, after the runoff; and (2) the signer did not vote in either the general or runoff primary election of a political party that made a nomination for the office sought by the candidate. *Id.* § 142.009. In other words, a circulator collecting signatures for an independent candidate's petition for the general election should only do so after the primary election of the Republican Party of Texas or the Texas Democratic Party and collect signatures only of persons who did not vote in those primaries.

The application and accompanying petition must be filed within 30 days of the primary election runoff. *Id.* § 142.006. The runoff for the 23rd District occurred on July 14, 2020,[3] so the deadline to file Sanders's petition with the required signatures was August 13, 2020. Sanders needed to collect the minimum 500 signatures in support of his petition, the signatures must have been "wet," and circulators must have witnessed each signature in-person.

In summary, Section 142.007(2)(A) of the Code requires prospective independent congressional candidates to obtain at least 500 petition signatures from voters who did not vote in the primary elections to be placed on the general-election ballot.

---

[3] Governor Abbott delayed the original runoff election date in response to the COVID-19 pandemic. *See* Proclamation by the Governor of the State of Texas, March 20, 2020, *available at* https://gov.texas.gov/uploads/files/press/PROCLAMATION_COVID-19_May_26_Primary_Runoff_Election_03-20-2020.pdf.

Sanders submitted his petition on August 13, 2020. By his own admission, Sanders did not collect signatures between the runoff and the petition deadline. There is no dispute that Sanders's petition does not contain the statutorily-required minimum of 500 valid signatures.

### The COVID-19 Pandemic Did Not Categorically Prohibit Gathering Signatures

Sanders protests that various public-health orders prevented his campaign from gathering signatures and that being denied placement on the general-election ballot would violate the United States Constitution. A nearly-identical argument brought by Milton Fagin, an independent candidate for the 57th District Court of Bexar County, Texas in San Antonio—the same state, county, and city as Sanders—has been rejected. *See Fagin v. Hughs*, 2020 WL 4043753 (W.D. Tex. July 17, 2020). Fagin alleged that under the circumstances of the COVID-19 pandemic, especially in light of the recent surge of cases in San Antonio, Texas's ballot-access requirements for independent candidates violated his First and Fourteenth Amendment rights. *Id.* at *1.

The court in *Fagin* denied Fagin's motion for a preliminary injunction, holding that the applicable COVID-19 pandemic orders—the same that apply to Sanders—did not prevent an independent candidate from gathering 500 signatures for his ballot-access petition. *Id.* at *4 (noting that "Plaintiff points to no state action attributable to either Defendant that prevents him from going door-to-door or petitioning in small gatherings for signatures" and Fagin had a less-than-severe burden to exercise his rights). The court in *Fagin* credited Texas's "important interests in requiring some preliminary showing of a significant modicum of support" and in "avoid[ing] ballot overcrowding and voter confusion." *Id.* at *5. Fagin appealed the denial of his preliminary injunction motion and sought an injunction pending appeal. *See* Fed. R. App. P. 8(a)(1)(C). The Fifth Circuit denied the motion. *See, Fagin v. Abbott*, No. 20-50690 (5th Cir. Aug. 26, 2020).

Sanders and Fagin shared the same minimum threshold of 500 signatures. Due to its size, as a prospective candidate for the 23rd District, Sanders had access to a significantly larger pool of potential signatures than Fagin. Sanders does not attempt to distinguish the factual situation in this case from that in *Fagin*. This court cannot. Persuaded by the logic of *Fagin*, the court finds that Sanders has not demonstrated a substantial likelihood of success on any of his claims.

The court acknowledges that the COVID-19 pandemic created additional adversity for all candidates. Yet lack of popular support, campaign effort, or some combination thereof is responsible for Sanders being denied a place on the general-election ballot. Any suggestion that the Secretary is prohibiting independent candidates from obtaining ballot placement for the general election is demonstrably false. Nine independent candidates for congressional seats in Texas successfully gathered at least 500 signatures and will therefore appear on the November general-election ballot. Four of those nine candidates are running for an office that held a July 14, 2020 primary runoff—like Sanders—and thus could not begin collecting signatures until July 15, 2020.

*Texas Has a Compelling Interest in Regulating the Ballot*

The Supreme Court evaluates First and Fourteenth Amendment challenges to state election laws under the "Anderson–Burdick" framework. See *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 420 U.S. 780 (1983). Under this standard, courts "must weigh 'the character and magnitude of the asserted injury to the rights protected by the [Constitution] that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). State rules that impose a severe burden on constitutional rights must be "narrowly drawn to advance a state interest of compelling importance." *Id.*

"Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citations omitted). The Court has long recognized the "important state interest in requiring some preliminary showing of a significant modicum of support" for those on the ballot. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

The Court has found that "States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (quotation marks and citation omitted). Requiring candidates to show a modicum of support to have their names on the ballot is reasonable. *See, e.g.*, *Nader v. Connor*, 332 F. Supp. 2d 982, 988 (W.D. Tex. 2004) (noting that when examining burdens imposed by Texas's ballot-access framework, ballot-access rules must be "viewed in their totality"). Sanders does not disagree that Texas has a legitimate interest in regulating the ballot. Instead, he argues that the absence of an independent candidate for the 23rd District necessarily means that Texas does not have a sufficient interest for its ballot-access laws because there is not a danger of ballot overcrowding. This contention ignores that the Court does not require "a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro*, 479 U.S. at 194–95.

The fact that there are not multiple independent candidates for the 23rd District shows that Texas's two-step process is working as designed. The Code's requirement that candidates must gather signatures on the back end likely dissuades non-serious candidates from filing a declaration of intent on the front end, given that any candidate will eventually need to show that requisite "modicum of support" to be placed on the ballot. *Jenness*, 403 U.S. at 442.

Sanders does not direct the court to any case that holds that the 500-signature threshold is unconstitutional or that a pandemic requires overriding policy determinations by a state's elected officials. Under these circumstances, given the opportunities that Sanders had to gather signatures, he cannot show that a "reasonably diligent" candidate would have failed to meet the 500-signature threshold. *See Storer v. Brown*, 415 U.S. 724, 742 (1974) (framing issue as whether "a reasonably diligent independent candidate be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?"). The general-election ballot in Texas will contain independent congressional candidates, but not in the 23rd District.

### b. The Court Will Deny the Application

The court concludes that Sanders has not met his burden of establishing a substantial likelihood of success on the merits. Because he fails there, the court need not address the other preliminary-injunction requirements. *Steen*, 732 F.3d at 386. Consequently, the court will deny the Application.

CONCLUSION

**IT IS ORDERED** that Sanders's Application for preliminary injunctive relief (Doc. #6) is **DENIED**.

SIGNED this __*16th*__ day of September, 2020.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE